IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| JANE ROE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 3:24CV145 (RCY) |
| | ) | |
| TYKESHAE FOWLKES TUCKER, *et al.*, | ) | |
|     Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff Jane Roe's Motion for Leave to Proceed Under Pseudonym, ECF No. 18, and Defendant Tykeshae Fowlkes Tucker's Motion to Dismiss, ECF No. 16. Defendant Tucker did not respond to Plaintiff Roe's Motion for Leave, and the time to do so has passed. The Motion to Dismiss has been fully briefed. The Court dispenses with oral argument as to both motions because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons that follow, the Court will grant Roe's Motion for Leave and deny Defendant's Motion to Dismiss.

**I. BACKGROUND**

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* Additionally, a court may consider any documents attached to the complaint. *E.I. du Pont de Nemours & Co. v. Kolon*

*Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Applying these standards, the Court construes the facts in the Complaint, including any attached documents, as follows.

Plaintiff Jane Roe is an incarcerated individual currently residing at Virginia Correctional Center for Women. Compl. 6. From 2019 until 2021, however, Roe was housed in the Central Virginia Correctional Unit #13 ("CVCU"), where both Defendants were employed. *Id.* At all relevant times, Defendant Tykeshae Fowlkes Tucker superintended CVCU, and Defendant Nkemdlilim Okili was employed as a correctional officer. *Id.*

**A. The Assault**

While housed at CVCU, Roe was charged with cleaning the showers. *Id.* at 7. On December 19, 2020, Defendant Okili was on duty and overseeing Roe's cleaning shift when she asked him about an infraction she had received that day. *Id.* Okoli offered to make the infraction "go away" in a manner that implied he expected sexual favor in return. *Id.* Roe understood this implication in part because Okoli had a reputation amongst inmates for sexually predatory behavior, particularly in areas like the bathroom that were not covered by security cameras. *Id.* at 7, 11; Compl. Ex. 1. at 11. Roe declined Okoli's advance and returned to her work in the showers. Compl. 7. Okoli then followed Roe into the showers, blocked her exit, pinned her against the shower door, and aggressively groped her breasts and buttocks. *Id.* at 7–8. He then lowered his face mask and kissed Roe on the mouth. *Id.* at 8. Finally, Roe was able to push past Okoli. *Id.* Roe did not immediately report the attack because she was fearful of Okoli's retaliation. *Id.* However, Okoli's attack caused her such psychological disturbance that, in January of 2021, she was placed under suicide watch. *Id.*

**B. Administrative Complaints and Investigation**

Roe first reported Okoli's attack in June of 2021, via a verbal report to another correctional officer, Officer Ross. *Id.* at 4–5. Officer Ross told Roe she would report it to the proper channels;

2

however, Officer Ross did not relay the complaint to anyone else, nor did she direct Roe to the appropriate staff. *Id*. at 4–5, 9. Because of Officer Ross's representation, Roe believed that she had adequately reported the attack and that it was being reviewed by prison administration. *See id.* at 7, 11; Compl. Ex. 1. at 11.

In May of 2021, Rebecca Young replaced Defendant Tucker as the superintendent of CVCU. *Id*. at 8. Around this same time, prison officials became aware of other allegations of sexual abuse by Defendant Okoli. *Id.* at 9; Compl. Ex. 1 at 4. These other, anonymous reports alleged that Okoli had engaged in sexual acts with inmates. Compl. 9; Compl. Ex. 1 at 4. On June 17, 2021, Assistant Superintendent Jennifer Bowler contacted the Special Investigations Unit ("SIU") about the anonymous reports and began reviewing security camera footage of Okoli's movements. Compl. 9–10; Compl. Ex. 1 at 4. Security camera footage of the dates of the alleged assaults revealed several instances in the laundry room where Okoli and an inmate would disappear from camera view for several minutes and then reappear. Compl. 10, Compl. Ex 1 at 4. Such behavior is consistent with Okoli's reported reputation for assaulting inmates in areas outside the view of security cameras. *See* Compl. 7, 11; Compl. Ex. 1 at 11.

SIU, Bowler, and Young continued to research the allegations against Okoli, during which they learned rumors of other sexual advances and attacks by Okoli, including his assault on Roe. Compl. 5; Compl. Ex 1 at 6, 10. On July 8, 2021, Superintendent Young questioned Roe about Okoli. Compl. 5. Because Roe believed that Officer Ross had reported her initial verbal allegation, Roe assumed the Superintendent was investigating her complaint. Compl. 10. During the meeting, Roe provided Young with a written statement describing Okoli's assault. Compl. Ex. 1 at 6, 10. Notably, Young did not direct Roe to the proper administrative procedures. Compl. 11.

In total, SIU's investigation revealed that Okoli had engaged in sexual misconduct with six different inmates over the course of twelve months. *Id.*; Compl. Ex. 1 at 4–8, 10–11. Each instance

3

of misconduct took place in either the laundry room hallway or bathroom, both of which were security camera "blind spots." Compl. 11; Compl. Ex. 1 at 11. The investigation also revealed other sexual misconduct by other correctional officers. *Id.* at 11–12; Compl. Ex. 1 at 8. As a result of the findings, Okoli was terminated. Compl. 12.

Bowler and Young reported the investigation's findings to the Chesterfield County Commonwealth Attorney's Office. Compl. 12. On December 6, 2021, Roe met with Assistant Commonwealth Attorney Matthew Gravens to provide a statement regarding Okoli's assault. Compl. 12. On February 14, 2022, Gravens sent Roe a letter stating that, unfortunately, the statute of limitations for sexual battery had run just days prior, and he would not proceed with an investigation against Okoli. Compl. 12; Compl. Ex. 2.

**C. Previous Case and Roe's Interim Administrative Complaints**

On December 1, 2022, Roe filed a Complaint in this Court asserting various civil rights claims against Tucker and Okoli, as well as against Young and an unnamed officer. *See Roe v. Tucker*, 2023 WL 6994226, at *4–6 (E.D. Va. Oct. 23, 2023). However, this Court found that Roe had failed to exhaust the available administrative remedies and dismissed the case without prejudice. *Id.*

Pursuant to this Court's previous ruling, on December 20, 2023, Roe filed a written complaint formally reporting the sexual assault to CVCU. Compl. 12–13; Compl. Ex. 3 at 1. On January 3, 2024, she filed an additional written grievance. Both complaints were denied, which Roe appealed. Compl. 12–13. On February 13, 2024, Roe received a final denial from the Regional Correctional Ombudsman, notifying her that she had exhausted all administrative remedies. *Id.*; Compl. Ex. 4.

## II. PROCEDURAL HISTORY

Proceeding under a pseudonym, Plaintiff Roe filed the instant case against Defendants Tucker and Okoli on February 29, 2024. Her Complaint advances three claims, each pursuant to 42 U.S.C. § 1983, specifically alleging violations of the Eighth Amendment (Counts One and Three) and the Fourth, Fifth, and Fourteenth Amendments (Count Two). Compl. 13–15. Attached to her Complaint are four exhibits: SIU's investigative report, Compl. Ex. 1; Assistant Commonwealth Attorney Graven's letter, Compl. Ex. 2; Roe's formal written complaints, Compl. Ex. 3; and the Ombudsman's notification that Roe had exhausted all administrative remedies, Compl. Ex. 4. Both Defendants were served with the Complaint on March 5, 2024. Summons, ECF No. 12; Summons, ECF No. 13. Defendant Tucker filed the instant Motion to Dismiss on March 26, 2024. Mot. Dismiss, ECF No. 16. Roe filed a Memorandum in Opposition on April 9, 2024. Pl.'s Opp'n Mot. Dismiss, ECF No. 18. The same day, Roe filed the instant Motion for Leave to Proceed Under Pseudonym. Mot. Leave Proceed Under Pseudonym ("Mot. Leave"), ECF No. 19. Tucker did not reply to Roe's Memorandum in Opposition to the Motion to Dismiss, nor did she respond to Roe's Motion for Leave. Defendant Okoli never appeared, and on September 25, 2024, the Clerk entered Okoli's default. Clerk's Entry Default, ECF No. 25.

## III. LEGAL STANDARD

### A. Proceeding Under Pseudonym

Generally, a complaint must name all parties to the suit. Fed. R. Civ. P. 10(a). The naming requirement demonstrates the presumption of judicial openness and its prioritization in American law. *Candidate No. 452207 v. CFA Institute*, 42 F.Supp.3d 804, 806 (E.D. Va. 2012). However, this principle "operates only as a presumption and not as an absolute, unreviewable license to deny." *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993).

Critically, in the Fourth Circuit, there is no affirmative requirement that a plaintiff ask for leave before filing a complaint under pseudonym. *See B.R. v. F.C.S.B.*, 17 F.4th 485, 496 (4th Cir. 2021) (declining to adopt *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989)). Instead, the Fourth Circuit has instructed district courts to conduct a fact-specific inquiry so to reconcile "the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014).

**B. Motion to Dismiss Under Rule 12(b)(6)**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). In resolving a motion under 12(b)(6), the plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

**C. Motion to Dismiss Under Rule 12(b)(4)**

A motion to dismiss under Rule 12(b)(4) challenges "insufficient process" or the sufficiency or form of the process itself. Fed. R. Civ. P. 12(b)(4). In comparison, a motion to dismiss under Rule 12(b)(5) allows dismissal for "insufficient *service* of process." Fed. R. Civ. P. 12(b)(5) (emphasis added). Generally, "[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service," and a "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and

complaint." 5B Wright & Miller § 1353 (footnote omitted). However, a 12(b)(4) motion "will be granted only when the defect is prejudicial to the defendant." *Id.*; *see also Brown v. Charlotte Rentals, LLC, et al.*, 2015 WL 4557368, at *4 (W.D.N.C. July 28, 2015) (declining to dismiss when the summons suffered from technical inaccuracy because "the process fulfilled its purpose of alerting defendants to the pendency of the action and is sufficient under the law.") (citing *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947)); *Morgan Stanley v. Babu*, 448 F. Supp. 3d 497, 504 (D. Md. 2020) ("The Fourth Circuit has provided that in cases where service of process has given a defendant actual notice of the claim against it, courts may adopt a liberal interpretation of [Federal Rule of Civil Procedure] 4 and 'uphold the jurisdiction of the court.'" (quoting *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963))).

## IV. DISCUSSION

**A. Motion for Leave to Proceed Under Pseudonym**

The Court begins its analysis with Roe's Motion for Leave to Proceed Under Pseudonym. District courts in the Fourth Circuit use the *James* factors when deciding if the circumstances of an action warrant the use of a pseudonym. *See e.g.*, *Doe v. Sidar*, 93 F.4th 241, 247 (4th Cir. 2024) (citing *James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993)). These factors are, in relevant part:

> whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; . . . whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James*, 6 F.3d at 238.[1] As the analysis below reveals, the circumstances here clearly warrant Roe's use of a pseudonym in this action. Accordingly, the Court will grant Roe's Motion for Leave.

---

[1] *James* also instructs courts to consider "the ages of the persons whose privacy interests are sought to be protected." *James*, 6 F.3d at 238. Because Roe has not disclosed her age, the Court finds that this factor has no bearing on the analysis.

7

The first *James* factor considers the pseudonymous party's need to preserve privacy. *James*, 6 F.3d at 238. Roe argues that her use of a pseudonym in this case allows her to avoid disclosing a "sensitive and highly personal" matter that, if revealed, risks harm beyond the typical "annoyance and criticism that may attend any litigation." *Id.*; Pl.'s Mem. Supp. Mot. Leave ("Pl.'s Mem. Supp.") 8, ECF No. 20. As described *supra*, this case arises from Defendant Okoli's alleged sexual assault of Roe. It is well established in the Fourth Circuit that cases arising from allegations of sexual assault necessarily concern information of a highly sensitive and personal nature for all parties involved in the alleged assault. Accordingly, courts often allow parties to such actions to proceed under pseudonym. *See e.g.*, *Doe v. Doe*, 85 F.4th 206, 211–12 (4th Cir. 2023); *Sidar*, 93 F.4th at 248. This factor therefore supports granting Roe's Motion for Leave and allowing her use of a pseudonym.

The second *James* factor asks whether denying leave for the requesting party to proceed under a pseudonym would risk exposure to retaliatory, mental, or emotional harm. *James*, 6. F.3d at 238; *A.D. v. Wyndham Hotels and Resorts, Inc.*, 2020 WL 5269758 at *2 (E.D. Va. March 20, 2020). The Court finds that it would. Given Roe's current status as an incarcerated person and Defendants' former employment as prison officials, denying Roe's Motion for Leave might expose her to retaliation from other inmates or officials. This is particularly true given the widespread online access to docket filings within and without the prison system. *Cf. E.E.O.C. v. Spoa, LLC*, 2013 WL 534337, at *3 (D. Md. Oct. 15, 2013) ("[I]n today's internet age, the docket filings [for this case] are likely to remain pervasively available . . . . [Plaintiff] may face psychological harm from having this sensitive information made permanently available to anyone with Internet access."). Thus, the second *James* factor also counsels the Court to grant Roe's Motion for Leave.

The next relevant *James* factor instructs courts to consider the involvement of a public officer or entity in the action. *James*, 6. F.3d at 238. Because "the public has a heightened interest

in litigation against the government," a reviewing court might disallow the use of pseudonyms in an action brought by or against a public entity. *Doe v. Rector and Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 594 (E.D. Va. 2016). However, this heightened interest is generally vindicated so long as "the public has full access to everything the government has filed." *Id.* Here, the public's interest is so vindicated, since all facts aside from Roe's identity are publicly accessible. The Court finds that this factor weighs neutrally in the analysis.

The final relevant *James* factor considers the degree to which a party's use of a pseudonym prejudices the other parties to the litigation. *James*, 6 F.3d at 238. Here, it appears to the Court that Roe's use of pseudonym would not incur any prejudice upon Defendants, since Defendants are aware of Roe's identity. *See* Pl.'s Mem. Supp. 10. Additionally, to the extent that a risk of prejudice exists, Defendant has abdicated her right to alert the Court of that risk, since she did not file a response to Roe's Motion for Leave. *See J.A. v. Abreu*, 2024 WL 1806514 at *3 (D. Md. April 25, 2024) ("Defendants have filed no response to the Motion; therefore, they do not contend they will suffer unfairness or prejudice should Plaintiff proceed anonymously."). Accordingly, like much of the above analysis, the final factor supports Roe's use of a pseudonym.

The Court finds that Roe's substantial interest in anonymity outweighs the minimal manner in which her anonymity impedes the public's interest in openness. *See Public Citizen*, 749 F.3d at 274. Because the Fourth Circuit does not require that a plaintiff ask for leave before filing a complaint under pseudonym, *B.R.*, 17 F.4th at 496, Roe's use of a pseudonym was appropriate at the outset of this litigation. Roe's Motion for Leave will be granted.

**B. Motion to Dismiss**

In support of her Motion to Dismiss, Defendant Tucker raises three issues. First, she argues that the Complaint fails to state a claim because the action is time barred under the two-year Virginia statute of limitations. Mem. Supp. Mot. Dismiss 6, ECF No. 17 (citing Va. Code Ann. §

9

8.01-243(A)).  Second, Tucker argues that Roe additionally fails to state a claim as to Tucker because Roe has failed to exhaust her administrative remedies regarding her supervisory complaint against Tucker and thus the Court must dismiss her as a party to the action under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Finally, Tucker argues that because Roe filed this case under a pseudonym, the matter must be dismissed under Federal Rule of Civil Procedure 12(b)(4) for insufficient process.  Because none of Tucker's arguments prevail, the Motion to Dismiss will be denied.

### 1. Administrative Exhaustion

Because it bears on the rest of her arguments, the Court begins its analysis with Defendant Tucker's arguments regarding administrative exhaustion.  Defendant Tucker argues that Roe has not adequately exhausted her supervisory claims against Tucker, since Roe's administrative complaints only named Defendant Okoli.  Mot. Dismiss Mem. Supp. 7, 14–15.  Citing the PLRA, Defendant Tucker argues that the claims against her should be dismissed as a result.  In response, Roe argues that the entirety of the instant action arose out of a single instance—Okoli's assault—which she adequately grieved.  Pl.'s Opp'n 17.  Because Roe complied with VADOC procedures, notified prison officials of the nature of her complaint, and exhausted available remedies, the Court declines to dismiss the action under the PLRA as to Tucker.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)), and an "untimely or otherwise procedurally defective administrative grievance" requires dismissal. *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006).  Exhaustion is required even if the administrative

10

remedies do not meet federal standards, are not "plain, speedy, and effective," and even if the relief sought is not available via the grievance process, such as monetary damages. *Porter*, 534 U.S. at 524.

Once the exhaustion requirement has been satisfied, a prisoner's complaint is considered sufficient in scope so long as it comports with the relevant administrative requirements. *Jones v. Bock*, 549 U.S. 199, 217 (2007). Notwithstanding Tucker's argument to the contrary, "nothing in the [PLRA] statute imposes a 'name all defendants' requirement." *Id.* This is because the exhaustion requirement does not serve to provide notice to potential defendants; rather, the requirement provides "a prison [opportunity] to address complaints about a program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219.

Thus, the relevant questions are whether Roe complied with VADOC complaint procedures and, in so doing, if Roe adequately notified prison officials of "the nature of wrong for which redress is sought." *Wilcox v. Brown*, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Here, Roe's Complaint adequately demonstrates that she complied with VADOC procedures. *See* Compl. 3; Compl. Ex. 4.[2] Further, while Roe's administrative complaints did not name Defendant Tucker, the complaints plainly alerted prison officials to the "nature of the wrong for which redress is sought"—Defendant Okoli's assault. *Wilcox*, 877 F.3d at 167 n.4; Compl. Ex. 3. The Court concludes that Roe has complied with the exhaustion requirement such that the Virginia Department of Corrections ("VADOC") was

---

[2] The Court described and analyzed the VADOC grievance procedures in its previous opinion, *Roe*, 2023 WL 6994226, at *2. Plaintiff's use of the grievance process here, *see supra* Part I.C., appears to comply with all the requirements described therein. To the extent that any latent noncompliance exists, it is not obvious from the face of the Complaint. *Cf. Anderson*, 407 F.3d at 682 (explaining that exhaustion is rarely evincible from a complaint alone). Because the Court is constrained to merely testing "the sufficiency of [the] complaint," *Republican Party of N.C.*, 980 F.2d at 952, further analysis is inappropriate.

adequately alerted to the nature of her complaint. Thus, despite not naming Defendant Tucker in her grievances, Roe has satisfied the demands of the PLRA. Accordingly, the Court will not grant Defendant Tucker's Motion to Dismiss on the basis of insufficient administrative exhaustion.

      2. <u>Timeliness of the Complaint</u>

Defendant Tucker also argues that Roe's claims are time-barred, and therefore the Complaint fails to state a claim. Mem. Supp. Mot. Dismiss 6–11. A court may determine the merit of a statute of limitations defense at the motion to dismiss stage only if "all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." *Id.*; *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). The Court finds that all necessary facts are easily gleaned from the Complaint and proceeds with its analysis.

Because no explicit statute of limitations for 42 U.S.C. § 1983 actions exists, federal courts borrow the personal injury statute of limitations from the relevant state. *Owens v. Okure*, 488 U.S. 235, 239 (1989); *Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01-243(A).

Federal law dictates when a § 1983 cause of action accrues. *See Nasim*, 64 F.3d at 955. "A claim accrues when the plaintiff becomes aware of his or her injury, or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, 2009 WL 2424084 *4, (E.D. Va. Aug. 6, 2009) (quoting *Nasim*, 64 F.3d at 955). Thus, a Virginia prisoner proceeding under § 1983 is required to file suit within two years of becoming aware of her injury.

Defendant Tucker argues that Roe's claim accrued on December 19, 2020, the date of Okoli's assault. Mot. Dismiss Mem. Supp. 6. Because more than two years passed between the date of accrual and the filing of this action, Tucker concludes, the matter is time-barred under Va. Code Ann. § 8.01-243(A). *Id.* In response, Roe argues that equitable tolling saves her action,

citing *Battle v. Ledford*, 912 F.3d 708 (4th Cir. 2019). Pl.'s Opp'n 10–11. The Court agrees that *Battle* imposes equitable tolling on this case and finds that Roe pursued her rights diligently. Thus, the instant action is timely.

In *Battle*, the Fourth Circuit considered the application of tolling principles to § 1983 actions subject to the PLRA exhaustion requirement, such as the one at bar. First, the *Battle* court found that federal equitable tolling principles apply to such actions, rather than Virginia's no-tolling rule. *Battle*, 912 F.3d at 718. Ordinarily, federal equitable tolling requires a litigant to demonstrate two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). However, finding that the PLRA exhaustion requirement is itself "a total and unusual barrier to filing [that] constitutes an extraordinary circumstance," *id*. at 719, the Fourth Circuit determined that a prisoner plaintiff proceeding under § 1983 can equitably toll the time between accrual and filing so long as she can demonstrate she has pursued her rights with reasonable diligence. *Id.* at 718–20; *Holland v. Florida*, 560 U.S. 631, 653 (2010) ("The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence."). If a plaintiff can so demonstrate, the statute of limitations runs from the date of exhaustion, rather than accrual. *Id.* at 720.

The Court finds that Roe has behaved reasonably diligently in pursuing her rights, and thus may avail herself of equitable tolling principles. As noted, Okoli's assault occurred on December 19, 2020. Compl. 7. Soon thereafter, Roe became stricken with overwhelming psychological distress resulting from the assault and was placed on suicide watch. *Id.* at 8. In June of 2021,[3]

---

[3] Notably, the Court does not find that the gap in time between the assault and Plaintiff's first report constitutes a lack of reasonable diligence. First, as noted, the assault left Plaintiff with significant psychological distress that undoubtedly delayed her pursuit of redress. Second, significant research has found that various sociological and psychological reasons dissuade many survivors of sexual abuse from reporting their assault at all. Denise-Marie Ordway, *Why Many Sexual Assault Survivors May Not Come Forward for Years*, Journalist's Resource (Oct. 5, 2018) (summarizing Katherine E. Miller & Laura C. Wilson, *Meta-Analysis of the Prevalence of*

Roe reported the assault to Officer Ross. Compl. 4–5. Officer Ross told Roe that she would report it through proper channels, but never did. *Id*. at 4–5, 9. Relying on Officer Ross's promise, from that point forward, Roe believed that her grievance was working its way through the administrative complaint system. *Id.* This erroneous but reasonable belief was reinforced the next month, when Superintendent Young asked Roe if she had experienced inappropriate encounters with Okoli. *Id*. at 5, 10. However, as described above, Young's meeting with Roe was not based on Roe's report to Officer Ross; rather, Young called Roe after receiving independent reports of Okoli's predatory behavior. *Id.* at 5; Compl. Ex. 1 at 6, 10.

During their meeting, Roe provided Young with a written statement of the assault. *Id.* Like Officer Ross, Young failed to pass Roe's complaint on to the proper administrative authorities, and again, Roe labored under the reasonable impression that her grievance had been properly received. *See id.* Then, the next year—once it became apparent that the prison authorities were not investigating Roe's claim—Roe filed a complaint in this Court. *See Roe v. Tucker*, 2023 WL 6994226 (E.D. Va. Oct. 23, 2023). The matter was pending before the undersigned from December of 2022 until October of 2023, when the Court found that Roe had failed to exhaust her administrative remedies and dismissed the case without prejudice. *See id*. Almost immediately thereafter, on December 20, 2023, Roe filed a written complaint formally reporting the assault to CVCU, and an additional written grievance on January 3, 2024. Compl. 12–13. On February 13, 2024, Roe received a final denial of her administrative complaints, which notified her that she had exhausted her administrative remedies. Compl. Ex. 4.

---

*Unacknowledged Rape* 17 Trauma, Violence, & Abuse 149 (Apr. 2016)). These factors are exacerbated in a prison context. *Id.* (summarizing Shannon Fowler et al., *Would They Officially Report an In-Prison Sexual Assault? An Examination of Inmate Perceptions*, 90 Prison J. 220 (2010)). Accordingly, the Court finds that, under the circumstances, Plaintiff diligently pursued her rights.

The Court finds that Roe's three-year pursuit of legal vindication constitutes reasonable diligence. Thus, per *Battle*, the statute of limitations runs from the point of administrative exhaustion—here, February 13, 2024. *Battle*, 912 F.3d at 720. Roe filed the instant action on February 29, 2024. Thus, the Court finds that only seventeen days counted against the two-year clock, and as a result, this action was timely filed.

### 3. Insufficient Process

Finally, Defendant Tucker argues that this Court should dismiss Roe's Complaint under Rule 12(b)(4) for insufficient process based on Roe's use of a pseudonym. Mem. Supp. Mot. Dismiss 15–16. Tucker's argument fails primarily because the Court has already concluded that Roe's use of a pseudonym did not render her Complaint—and by extension, service of process—improper under Rule 10. *See supra.* Defendant Tucker's argument additionally fails because Rule 12(b)(4) only permits dismissal where the alleged defect was prejudicial to the defendant. 5B Wright & Miller § 1353; *Brown*, 2015 WL 4557368, at *4; *Morgan Stanley*, 448 F. Supp. 3d at 504. In a case such as here, where Defendants are aware of Roe's identity, Roe's use of a pseudonym does not prejudice Defendant Tucker nor Defendant Okoli. Thus, dismissal under Rule 12(b)(4) is inappropriate.

## V. CONCLUSION

For the reasons detailed above, Plaintiff Roe's Motion for Leave to Proceed by Pseudonym will be granted, and Defendant Tucker's Motion to Dismiss will be wholly denied.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: January 7, 2025
Richmond, Virginia